## Mabry v. Commonwealth.

(Decided December 4, 1923.)

### Appeal from Christian Circuit Court.

Criminal Law—Issue of Alibi in Prosecution for Sale Held for Jury.—In a prosecution for sale of spirituous liquors, held, in view of conflicting evidence, that determination of issue of alibi was

solely for jury, and a conviction was not flagrantly against the weight of the evidence.

BREATHITT & BREATHITT for appellant.

THOS. B. McGREGOR, Attorney General, and EDWARD L. ALLEN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Alonzo Mabry was convicted in the Christian circuit court of the offense of selling spirituous liquors and his punishment fixed at a fine of $100.00 and thirty days in jail. On this appeal the only ground urged for a reversal of the judgment of the lower court is that the verdict of the jury is not sustained by the evidence.

The Commonwealth introduced as witnesses two county patrolmen, whose evidence is to the effect that on the morning of March 15, 1922, between ten and eleven o'clock, they entered a soft drink stand in the city of Hopkinsville and one of them purchased from the defendant one half-pint of whiskey, paying him $1.50 therefor. Neither of them knew the defendant at the time, but one of them asked him his name and he stated that it was Alonzo Mabry; that there is a partition in the building and that these three went through a door to the rear of the partition and there made the purchase. The package was labelled with the date of purchase, preserved and its contents exhibited to the jury.

Both witnesses identified defendant as the seller of the liquor. One is positive, and the other, while not so positive, is clear in his belief of such identity.

The defense is an *alibi*. It is claimed that the soft drink stand was run by Walter Mabry, a brother of defendant; that Walter was sick that day and the stand was run by one Walter Piersy, who resembled the defendant; that the defendant was shooting dice in a room some distance away continuously from 9 a. m. until 5 p. m. This was testified to by him and George Harris, who was present with him part of the time, and by C. E. Drake and Lewis Simons, who claimed to have been with him all the day.

In corroboration of this it is stated that Drake lost heavily to the defendant and borrowed from him the sum of $80.00, for which he gave him a check, and a check for

that amount, bearing date March 15, 1922, signed by C. E. Drake and purporting to have been paid and cancelled by the bank was produced and identified by defendant and Drake and introduced as evidence. Drake testifies that this is the only check he ever gave defendant, and that it was dated correctly. Also it was testified by Simons and the defendant that Simons and C. E. Anderson lost and had to borrow money from defendant to return home; that Anderson gave defendant a check for the amount but the funds were not on hand and this check was not presented at bank; however, it was identified by Simons and produced in evidence and bore the date indicated.

These witnesses say that defendant was winning all the time and are positive that he never left the room; that the checks were correctly dated; that the soft drink establishment was owned and operated by his brother and that he had no interest in it and never worked therein. He also filed an affidavit on motion for a continuance and the admissible statements of this were read as the deposition of his brother, Walter Mabry. It was to the effect that Walter Mabry owned and operated the establishment where the whiskey was purchased; that he was sick at the time of the alleged purchase and his business was conducted by Walter Piersy; that the defendant had no connection whatever with the business; that Piersy had left the state about six months before and was then supposed to be in the state of Tennessee.

From these facts it is argued that it is clearly a case of mistaken identity upon the part of the Commonwealth's witnesses and that the verdict should be set aside as flagrantly against the evidence.

The exhibits are apparently genuine and if acquired in the manner claimed by defendant strongly corroborate his evidence, but it does not necessarily follow that they were executed for the purpose mentioned or that the game, if it existed, was continuous during the day.

It is peculiarly within the province of the jury to determine such questions. Both sets of witnesses were before it and it heard the evidence and saw their demeanor upon the witness stand and it was for it to determine which side it would believe. While there is force in the suggestion made by the defense, it is a question upon which the jury passed and we cannot say that in accept-

ing the evidence of the Commonwealth and rejecting that offered by the defense, its conclusions were so flagrantly against the weight of the evidence as to appear at first blush to be the result of passion or prejudice.

Judgment affirmed.